# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

***

ROBIN L. HILLGEN-RUIZ, *et al.*,

                    Plaintiffs,

vs.

TLC CASINO ENTERPRISES, INC, *et al.*,

                    Defendants.

Case No. 2:14–cv–437–APG–VCF

**REPORT & RECOMMENDATION**

This matter involves Robin L. Hillgen-Ruiz's employment-discrimination action against Four Queens Hotel & Casino. (*See* Compl. (#1-1) at ¶¶ 7–14[1]). Before the court is the Casino's Motion to Compel Arbitration (#15). Hillgen-Ruiz opposed (#19); and the Casino replied (#20). For the reasons stated below, the Casino's motion should be granted and Hillgen-Ruiz's employment-discrimination action should be stayed, as required by 9 U.S.C. § 3.

## BACKGROUND

On November 22, 2010, Robin L. Hillgen-Ruiz completed an online application for a position at Four Queens Hotel & Casino in Las Vegas, Nevada. (*See* Def.'s Mot. to Compel (#15) at Ex. 1). The job application was eight pages long. (*Id.*) It states that Hillgen-Ruiz has a Bachelor of Arts and completed one year of graduate studies. (*Id.*)

The final page of the application is entitled "Applicant Statement and Agreement." (*Id.*) It consists of seven paragraphs in ten or eleven point font. (*Id.* at 18). Although none of the paragraphs contain headings notifying the applicant what each paragraph discusses, the contract contains several

---

[1] Parenthetical citations refer to the court's docket.

standard contract clauses, including an integration clause, at will employment clause, and a mandatory

arbitration clause. (*See id.*) In full, the arbitration clause states:

> I also recognize that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they are based on the Nevada Fair Employment Practices Act and/or Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable local, state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employees benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical disability benefits under the Nevada Workers' Compensation Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the Nevada Workers' Compensation Act, and claims for unemployment compensation pursuant to the Nevada Unemployment Compensation Laws) shall be submitted to and determined exclusively by binding arbitration. I understand and agree that after I exhaust administrative remedies through the state or federal agency, I must pursue any such claims through this binding arbitration procedure. I acknowledge that the Company's business and the nature of my employment in that business affect interstate commerce. I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, 9 U.S.C. section 1, et seq., in conformity with the procedures of Nevada Revised Statutes Sections 38.206, et seq., and the Nevada Rules of Civil Practice (including all mandatory and permissive rights to discovery). However in addition to requirements imposed by law, any arbitrator herein shall be a retired trial court judge and shall be subject to disqualification on the same grounds as would apply to a judge of a state court. To the extend applicable in civil actions in Nevada state courts, the following shall apply and be observed: all rules of pleading (including the right of dumurrer/motion to strike), all rules of evidence, and all rights to resolution of the dispute by means of motions for summary judgment and/or judgment on the pleadings. The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, any such determinations shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including but not limited to, notions of "just cause") for his/her determinations other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged as though in connection with a state court civil litigation proceeding. The arbitrator shall modify the times set by the Nevada Rules of Civil Practice for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. The allocation of costs and arbitrator fees shall be governed by Nevada Revised Statutes and/or controlling case law. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3–4), even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration: thus, a court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite any state law provision to the contrary. **I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION AGREEMENT PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.**

Hillgen-Ruiz got the job. On December 13, 2010, she reviewed the application again, and signed

the bottom of the application immediately beneath the arbitration clause. (*Id.*) Hillgen-Ruiz worked at

2

Four Queens Hotel & Casino from December 27, 2010 to July 20, 2012. (Compl. (#1-1) at ¶ 7). She was an "exemplary employee" and, as a result, was promoted to the position of Assistant Casino Controller. (*Id*.)

Working at Four Queens Hotel & Casino, however, was not always easy. Hillgen-Ruiz suffered from severe migraines, which resulted in dizziness, nausea, and vomiting. (*Id*. at ¶ 8). This made focusing difficult, delayed her reactions, and altered her judgment. (*Id*.) Unfortunately, these symptoms were exacerbated by the Casino's "sudden movement[s], bright lights, and loud noises." (*Id*.)

On July 11, 2012, Hillgen-Ruiz submitted a Family-Medical-Leave-Act form, requesting time off for medical reasons. (*Id*. at ¶ 9). For days later, she picked up a copy of the Las Vegas Review Journal. (*Id*.) She saw an employment advertisement placed by the Casino. (*Id*.) They were soliciting applications for her position. (*Id*.)

Two days later, Hillgen-Ruiz contacted the human resources department, requesting an update on her request for leave. (*Id*. at ¶ 12). Two days later, she heard back. (*Id*.) Additional paperwork was needed to process her request. (*Id*.) Nonetheless, Hillgen-Ruiz was terminated in July 20, 2012. (*Id*. at ¶ 13). Paperwork provided by the Casino stated that her termination was "at will." (*Id*. at ¶ 14).

On January 31, 2014, Hillgen-Ruiz commenced this action, alleging one claim for employment discrimination under the Family Medical Leave Act, 29 U.S.C. §§ 2615, *et seq*., and one claim for negligent hiring, training, and supervision. (*Id*. at 4–6). Now, after litigating the dispute in state and federal court for eight months, the Casino moves the court to compel the parties to arbitrate, as required by Hillgen-Ruiz's employment application.

## LEGAL STANDARD

"[A]n agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Chiron Corp. v. Ortho*

3

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). The Federal Arbitration Act provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are enforced under sections 3 and 4 of the Act, which provide "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under section 3, courts may order "a stay of litigation in any case raising a dispute referable to arbitration," while section 4 empowers courts to enter "an affirmative order to engage in arbitration." *Id.*; 9 U.S.C. §§ 3–4.

The Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *see also Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984) (finding that the Act "declared a national policy favoring arbitration"); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (stating that the Act "embodies a clear federal policy requiring arbitration" when there is a written arbitration agreement relating to interstate commerce). This means that "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

Despite this policy, arbitration is a "matter of contract" and no party may be required to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quoting *United Steelworkers*, 363 U.S. at 582). When determining whether a party should be compelled to arbitrate claims: the court must engage in a two-step process. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at

issue. *Id*. A party cannot be ordered to arbitration unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd*., 636 F.2d 51, 54 (3d Cir. 1980)). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms. *Chiron Corp*, 207 F.3d at 1130.

## DISCUSSION

Following the Ninth Circuit's decision in *Chiron*, the court addresses the Casino's motion to compel arbitration by answering two questions: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. Both questions are addressed below.

### I.  Whether a Valid Arbitration Agreement Exists

When determining whether a valid arbitration agreement exists, federal courts "should apply ordinary state-law principles that govern the formation of contracts" as well as "generally applicable contract defenses, such as fraud, duress, or unconscionability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Accordingly, when determining whether a defense to enforcement exists, the court relies on state law. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (2010) (citing *Nagrampa v. Mailcoups, Inc*., 469 F.3d 1257, 1264–65, 1280 (9th Cir. 2006)).

Here, Hillgen-Ruiz challenges the arbitration agreement by invoking three state-law contract principles: Hillgen-Ruiz argues that (1) the Casino waived its right to arbitrate; (2) the arbitration agreement is unconscionable; and (3) the arbitration agreement is illusory. Each is discussed below.

#### A.  *Whether the Casino Waived its Right to Arbitrate*

First, Hillgen-Ruiz argues that the Casino waived its right to enforce the arbitration agreement because the Casino waited five months before moving to compel arbitration and the parties have "completed a scheduling order, initial disclosures, multiple meet and confers," and taken Hillgen-Ruiz's deposition. (*See* Pl.'s Opp'n (#19) at 12:6–10). The court disagrees.

The right to arbitration, like any other contract right, can be waived. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758–59 (9th Cir. 1988). "A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Brown v. Dillard's, Inc*., 430 F.3d 1004, 1012 (9th Cir. 2005) (citing *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)). "However, the Ninth Circuit emphasizes that waiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof." *United States v. Park Place Assoc., Ltd*., 563 F.3d 907, 921 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also Letizia v. Prudential Bache Sec.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (stating that a finding of waiver is not favored).

Hillgen-Ruiz has not satisfied her "heavy burden of proof." *See id*. In *Lake Communications, Inc*., the Ninth Circuit held that a party did not waive its right to arbitrate where it ligated an action for over a year and filed a dispositive motion. *Lake Commc'ns, Inc. v. ICC Corp*., 738 F.2d 1473, 1477 (9th Cir. 1984). Similarly, in *Breeden*, the District of Hawaii determined that a party did not waive its right to arbitrate where it engaged in substantial motion and discovery practice. *Creative Telecomm., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1234 (D. Haw. 1999). Here, Hillgen-Ruiz's has not proceeded as far as the parties' actions in *Lake Communications* and *Breeden*. Accordingly, the court is unpersuaded that the Casino acted inconsistently with its right to compel.

However, even if the court were to assume that the Casino's actions were inconsistent with its right to seek arbitration, Hillgen-Ruiz has not plausibly demonstrated prejudice. The parties are currently in the midst of discovery. Whether the parties litigate in federal court or arbitrate, both agree that discovery is necessary and must continue. (*Compare* Pl.'s Opp'n (#19) at 14:1–2) *with* (Def's Reply (#20) at 14:11). The court cannot conclude that the Casino waived its right to compel without a showing of prejudice. *See Lake Commc'ns, Inc.*, 738 F.2d at 1477.

### B.      *Whether the Arbitration Agreement is Unconscionable*

Next, Hillgen-Ruiz argues that the arbitration agreement is unconscionable. A contractual provision is unconscionable if it is both procedurally and substantively unconscionable. *D.R. Horton, Inc. v. Green*, 554, 96 P.3d 1159, 1163 (2004) (citing *Burch v. Dist. Ct.*, 49 P.3d 647, 650 (2002)); *see also Gonski*, 245 P.3d at 1169 (stating that greater procedural unconscionability compensates for lesser substantive unconscionability and *vice versa*) (citations omitted). A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *D.R. Horton*, 554, 96 P.3d at 1163 (citation omitted). Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences. *D.R. Horton*, 554, 96 P.3d at 1163 (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002)). By contrast, substantive unconscionability focuses on the one-sidedness of the contract terms. *D.R. Horton*, 554, 96 P.3d at 1163 (citing *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003), *cert. denied*, 540 U.S. 811 (2003).

Hillgen-Ruiz argues that the arbitration agreement is unconscionable for two reasons. First, Hillgen-Ruiz asserts that the agreement is substantively unconscionable because it "is silent on

7

arbitrator's fees and costs and Defendant refuses to pay such arbitrator's fees and costs, which would preclude Plaintiff from vindicating her rights." (*See* Pl.'s Opp'n (#19) at 7:19–20). This is incorrect.

The agreement expressly states: "I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, 9 U.S.C. section 1, et seq." Rule 1 of the National Rules for the Resolution of Employment Disputes of the American Arbitration Association states that "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." In turn, Rule 39(d) states that "[t]he arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable laws." Assuming, as Hillgen-Ruiz contends, that the agreement is silent on fees and costs, the agreement would not be substantively unconscionable because it incorporates Rule 39(d).

However, the agreement is not silent on fees and costs. It states that "[t]he allocation of costs and arbitrator fees shall be governed by Nevada Revised Statutes and/or controlling case law." Under Nevada Revised Statute section 38.238, "an arbitrator's expenses and fees, together with other expenses, must be paid as provided in the award." This means that the costs of arbitration are award at the end of the dispute. This obviates the concern raised here: that Hillgen-Ruiz is unable to vindicate her rights because costs must be paid up front.

Second, Hillgen-Ruiz argues that the agreement "is procedurally unconscionable because of the unequal bargaining power and the 'take it or leave it' nature of the Agreement." (*See* Pl.'s Opp'n (#19) at 9:3–4). The court is unpersuaded. Under Nevada law, a clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *D.R. Horton*, 554, 96 P.3d at 1163 (citation omitted). Procedural

unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences. *Id.* at 1163 (citing *Circuit City Stores, Inc.*, 279 F.3d at 893).

Although the contract contains fine print and complicated language, the agreement is not procedurally unconscionable. Hillgen-Ruiz had "a meaningful opportunity to agree to the clause" because she read the agreement at least twice: once on November 22, 2010, when she applied for the position, and again on December 13, 2010. (*See* Def.'s Mot. to Compel (#15) at Ex. 1). On both occasions, Hillgen-Ruiz dated the agreement and signed her name beneath two lines, which read: "**DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT**" and "I hereby certify that this application was previously submitted by me online and that the information is accurate." (*Id.*) This indicates that Hillgen-Ruiz read, understood, and accepted the agreement's terms.

The court is also unpersuaded by Hillgen-Ruiz's argument that the agreement is procedurally unconscionable because it was presented on a take-it-or-leave-it basis. The Nevada Supreme Court has held that adhesion-contract analysis is inapplicable in the employment context. In *Kindred v. Second Judicial Dist. Court*, the Court expressly rejected Hillgen-Ruiz's argument:

> An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take-it-or-leave-it basis, without affording the consumer a realistic opportunity to bargain. We have never applied the adhesion contract doctrine to employment cases. Moreover, we have held that parties to a written arbitration agreement are bound by its conditions regardless of their subjective beliefs at the time the agreement was executed. For these reasons, we conclude that [Appellant's] argument is meritless and that she entered into two valid arbitration agreements.

*Kindred*, 116 Nev. 405, 411, 996 P.2d 903, 907 (2000) (per curiam) (citations and quotations marks omitted). Hillgen-Ruiz overlooks the Court's decision in *Kindred*, which is controlling. Instead, she relies on a Ninth Circuit decision that interprets California law. (*See* Pl.'s Opp'n (#19) at 9) (citing

*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1070 (9th Cir. 2007)). California law does not govern the parties' contract, which was consummated in Nevada.

### C.     *Whether the Arbitration Agreement is Illusory*

Finally, Hillgen-Ruiz argues that the arbitration agreement is invalid because it is illusory. A contract or promise is illusory if there is "a promise merely in form, [that] in actuality [does] not promis[e] anything." 3 WILLISTON ON CONTRACTS § 7:7 (4th ed.). This means that a contract is illusory if it does not mutually bind both parties. For instance, in *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91, 118 N.E. 214 (N.Y. 1917), the parties executed an employment contract, which gave the plaintiff "the exclusive right . . . to place indorsements" on behalf of the defendant. When the defendant placed her own indorsement, the plaintiff sued. *Id*. The defendant argued that there was no contract on which to sue because the plaintiff did "not bind himself to anything." *Id*. Judge Cardozo disagreed, saying that a contract need not contain express, written provisions to create mutual, non-illusory promises: "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Id*. (citations omitted).

Here, it is unnecessary for the court to determine whether the agreement contains implied terms that would prevent it from being illusory because the agreement's express terms are mutual and, therefore, not illusory. Hillgen-Ruiz contends that the following provision renders the agreement illusory:

> No implied, oral, or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if the Company is not a corporation), no supervisor or representative of the company, other than the President of the company, (or majority owner or owners if company is not a corporation), has any authority to make agreements contrary to the foregoing.

10

(*See* Pl.'s Opp'n (#19) at 6, 11). Hillgen-Ruiz interprets this provision as empowering the Casino "to alter any terms of Plaintiff's employment . . . with or without cause at any time." (*Id*. at 11:1–4). This is incorrect. The provision merely means that any collateral or subsequent agreements must be in writing and signed by Hillgen-Ruiz and the President of the Company, not Hillgen-Ruiz's supervisor. Accordingly, Hillgen-Ruiz's reliance on *Harmon v. Hartman Management, L.P.*, No. Civ.A. H-04-1597 2004 WL 1936211, at *2 (S.D. Tex. 2004) is misplaced. Her agreement, unlike the agreement in *Harmon*, is not alterable at will by one party.

Finally, the court briefly notes that even if the agreement were illusory, Nevada recognizes the doctrine of severability. *Linebarger v. Devine*,  214 P. 532, 534 (1923); *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (1982); *Sprouse v. Wentz*, 781 P.2d 1136, 1140 (1989). Severability preserves the contracting parties' intent by maintaining the existence of a contract by striking illegal provisions that are collateral to the contract's primary purpose. *See  Linebarger*,  214 P. at 534; *see also* 8 Williston on Contracts § 19:70 (4th ed. 2014) (citing Restatement Second, Contracts § 183, comment a) ("An illegal portion of an agreement that relates to the remedy is more readily separable.").

## II.     Whether the Arbitration Agreement Encompasses this Action

The court turns to the second inquiry under *Chiron*: whether the arbitration agreement encompasses Hillgen-Ruiz's employment-discrimination action. *Chiron Corp*, 207 F.3d at 1130.

In judging the scope of an arbitration agreement, Nevada courts "resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Int'l Assoc. Firefighters v. City of Las Vegas*, 764 P.2d 478, 480 (1988). "Disputes are presumptively arbitrable, and courts should order arbitration of particular grievances 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. at 481. Invoking precedent of the United States Supreme Court, the Nevada Supreme Court has stated that "in cases

involving broadly worded arbitration clauses, 'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (quoting *AT&T Tech., Inc.*, 475 U.S. at 650.

The parties do not dispute that the Casino's arbitration agreement encompasses Hillgen-Ruiz's employment-discrimination action. Nonetheless, the court finds that the arbitration agreement does encompass Hillgen-Ruiz's employment-discrimination action because it expressly states that it applies to "all disputes that may arise out of the employment context." Hillgen-Ruiz states that her claims arise out of her employment with the Casino. (*See generally* Compl. #1-1). Therefore, the court should grant Four Queens Hotel & Casino's Motion to Compel Arbitration and stay Robin L. Hillgen-Ruiz's employment-discrimination action.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Four Queens Hotel & Casino's Motion to Compel Arbitration (#15) be GRANTED.

IT IS FURTHER RECOMMENDED that Robin L. Hillgen-Ruiz's employment-discrimination action be STAYED, as required by 9 U.S.C. § 3.

IT IS SO RECOMMENDED.

DATED this 12th day of September, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

12